Decided 30 November, 1903.

**McANISH *v.* GRANT.**

[74 Pac. 396.]

| 44 | 57 |
| 44 | 500 |
| 44 | 57 |
| 47 | 160 |

EFFECT OF APPEARANCE ON JURISDICTION—FORCIBLE DETAINER.

1. Under Section 5746 of B. & C. Comp., giving justices of the peace jurisdiction of actions to recover possession of real estate, and section 63 thereof, providing that a voluntary appearance shall be equivalent to personal service on defendant, the appearance of defendant by an answer to the merits gives the justice's court complete jurisdiction in such cases.

REVIEW OF JUDGMENT—NATURE OF WRIT.

2. Under Section 594, B. & C. Comp., declaring that the writ "heretofore known

as the writ of certiorari is known in this code as the writ of review," only the name of the writ is changed, and a writ of review will not lie to correct errors in the exercise of a rightful jurisdiction; hence, a judgment of a justice of the peace, having jurisdiction, rendered in an action for unlawful detainer, cannot be reviewed, the writ not being intended to correct mistakes of law or judgment where the court has acted within its powers.

From Union: Robert Eakin, Judge.

This is a special proceeding by Stewart McAnish against William Grant to review the judgment of an inferior court. The transcript shows that on April 21, 1903, the plaintiff commenced an action in a justice's court of Union County, alleging that the defendant Earnest Schreckler was in the possession of certain real property in that county, which he unlawfully held with force, and that plaintiff was entitled to the possession thereof, but Schreckler refused to deliver the same to him. The answer denied the material allegations of the complaint, and for a further defense averred that about October 1, 1901, the plaintiff, by a written contract, demised to Schreckler the lands described in the complaint, for the term of three years, "for farming and agricultural purposes," at a rental of $500 per annum, payable yearly in advance. A copy of the lease is made a part of the answer, and provides that Schreckler should till the land in a good and husbandlike manner; that he would not commit or permit any waste; that upon the expiration of the lease, or if for any cause it should be determined prior thereto, he would surrender the premises to the plaintiff peaceably; that he would pay as rent $500 annually in advance; that he would plow and sow to grain as much as possible of a certain twenty acres of the demised premises during the first year of the term, and, if such tract was deemed productive grain land, he would during the term continue to cultivate it for that purpose, but, if it should be concluded unprofitable therefor, he would sow grass thereon; that he would, as rapidly as possible, resow such parts of the meadow as might be neces-

sary, the plaintiff furnishing seed therefor; and that he would keep the fences on the place in repair, plaintiff supplying the material for that purpose. The lease contains the following condition: "Should the said party of the second part [Schreckler] fail, neglect, or refuse to pay the rents above specified at the times mentioned, or to perform the conditions herein required of him to be performed, then the said party of the first part [the plaintiff] may at any time while such default continues declare this lease null and void, and may reënter and repossess himself of the said premises as of his former estate, forcibly if necessary, without in any manner being deemed guilty of trespass."

The answer further alleges that the possession of the demised premises was delivered to Schreckler, who holds the same under the lease, and has paid the rent therefor in full to October 1, 1903, and fully performed all the conditions thereof upon his part, except such as were waived or modified by plaintiff, particularly specifying the same; that plaintiff had neglected and refused to comply with the conditions agreed to be performed by him, and failed to serve Schreckler with notice of his intention to declare the lease null and void, or to reënter and repossess himself of any part of the lands, and by reason thereof Schreckler was entitled to remain in the peaceful possession of the whole of the premises. A motion to strike out parts of the answer having been denied, a reply was filed, denying that $500 per year was the entire rent, or that it had been paid in full to October 1, 1903, but not putting in issue the averment that the money consideration thereof had been paid to that time, or that the premises were leased for farming and agricultural purposes. Schreckler thereupon moved the court for a judgment on the pleadings on the grounds that it affirmatively appeared therefrom that the rent had been paid to October 1, 1903, and that the reply

disclosed that no notice to quit had been given until April 9th of that year. This motion having been sustained, judgment was rendered against plaintiff for the costs and disbursements; the court reciting that it appeared upon the face of the pleadings that the rent had been paid to October 1, 1903, and that plaintiff had not served Schreckler with a notice to quit the premises ninety days before the commencement of the action. The plaintiff, to set aside such judgment, filed a petition for a writ of review, in which the defendant William Grant, the justice of the peace who tried the action, was made a party; and, the writ having been issued, the pleadings, motions, and judgment in the justice's court were certified up to the circuit court of Union County, which dismissed the proceedings, and from the latter judgment the plaintiff appeals to this court.                                   AFFIRMED.

For appellant there was a brief over the names of *J. W. Knowles* and *C. H. Finn*, with an oral argument by *Mr. Finn*.

For respondent there was a brief over the names of *Carter & Raley* and *Ramsey & Oliver*, with an oral argument by *Mr. Wm. Ramsey*.

MR. CHIEF JUSTICE MOORE, after stating the facts as above, delivered the opinion of the court.

The plaintiff's counsel insist that no provision is made by statute whereby a landlord can appeal from an erroneous judgment rendered against him in a justice's court in an action of forcible entry or unlawful detainer, and, as a writ of review is the only remedy by which such a judgment can be corrected, an error was committed by the trial court in dismissing the proceedings. It is maintained by defendant's counsel, however, that the writ of review, in this State, is substantially the same as the common-law writ of certiorari; that proceedings of this char-

acter were not designed to correct errors committed in the exercise of the power delegated; and that the only questions to be considered in the case at bar are whether or not the justice's court had jurisdiction to render the judgment complained of, and, if so, did it proceed in the manner prescribed by law?

The statute prescribing the process in this mode of procedure is as follows: "The writ heretofore known as the writ of certiorari is known in this code as the writ of review": B. & C. Comp. § 594. The writ of review bears the same relation to our system of civil procedure that the writ of certiorari sustained to the common law (*Burnett* v. *Douglas County*, 4 Or. 388), the name only of the latter having been changed by statute (*Canyonville, etc. Road Co.* v. *Douglas County*, 5 Or. 280), and, like the ancient mode of procedure, the modern writ merely brings up the record: *Barton* v. *LaGrande*, 17 Or. 577 (22 Pac. 111). In *Dayton* v. *Board of Equalization*, 33 Or. 131 (50 Pac. 1009), Mr. Justice WOLVERTON, in speaking of the character of the writ of review, and the office which it performs, says: "It is substantially the common-law remedy by certiorari, which was invoked for the purpose of having the entire record of the inferior tribunal brought up for inspection, to determine whether it had jurisdiction, or had exceeded its jurisdiction, or had failed to proceed according to the essential requirements of the law." In *Garnsey* v. *County Court*, 33 Or. 201 (54 Pac. 539, 1089), Mr. Justice BEAN, in speaking of the writ of review, says: "Its object, under the statute, as at common law, is to keep inferior courts and tribunals within the bounds of their jurisdiction, and compel them to proceed regularly in the disposition of matters brought before them for determination; but it cannot be used as a substitute for an appeal, nor does it lie to correct mere errors in the exercise of a rightful jurisdiction, or to inquire whether the rulings of the inferior

tribunal upon the law and the evidence, and in the application of the law to the facts, are correct."

Though the writ of review and the right of appeal are concurrent (B. & C. Comp. § 597; *Hill* v. *State*, 23 Or. 446, 32 Pac. 160; *Kirkwood* v. *Washington County*, 32 Or. 568, 52 Pac. 568; *Fanning* v. *Gilliland*, 37 Or. 369, 61 Pac. 636, 62 Pac. 209, 82 Am. St. Rep. 758), these remedies are dissimilar, and certiorari cannot be used to subserve the purposes of an appeal: Harris, Certiorari, § 44; *Garnsey* v. *County Court*, 33 Or. 201, (54 Pac. 539). An appeal from a judgment given in a justice's court to the circuit court having been perfected, the cause is tried anew in the latter court, as if originally commenced therein : B. & C. Comp. § 2246. A writ of review will not bring up the evidence, but only the record, from an inspection of which jurisdiction and correctness of the judgment are to be determined : *Road Co.* v. *Douglas County*, 6 Or. 299; *Poppleton* v. *Yamhill County*, 8 Or. 334; *Smith* v. *City of Portland*, 25 Or. 297 (35 Pac. 665). Under the statute now in force, a party dissatisfied with a judgment rendered against him in a justice's court has a choice of remedies, and may either appeal from the judgment, or have it reviewed ; but having elected his mode of procedure, he is bound by the practice applicable thereto : *Feller* v. *Feller*, 40 Or. 73 (66 Pac. 468). In those States which have not materially departed from the doctrine of the common law in respect to the remedy of certiorari, the rule prevails that the writ will not lie to correct errors in the exercise of a rightful jurisdiction, the causes never being tried *de novo* on the merits : 4 Ency. Pl. & Pr. 98 ; Harris, Certiorari, § 2. "An error of judgment on the part of a judge or officer, either as to the facts or to the law of the case," says Mr. Spelling in his work on Extraordinary Relief (section 1891), "could not be inquired into and corrected."

1. The action instituted by the plaintiff herein against Schreckler was to recover the possession of real property alleged to have been unlawfully detained, and, the latter having filed an answer to the complaint, the justice's court secured jurisdiction of the subject-matter and of the parties: B. & C. Comp. §§ 5746 and 63.

2. That court having jurisdiction to render a judgment in the action, the question to be considered is whether or not it proceeded in the manner prescribed by law. The statute regulating the procedure in such courts is as follows: "Actions at law in justice's courts shall be commenced and prosecuted to final determination, and judgment enforced thereon, in the manner provided in the Code of Civil Procedure for similar actions in courts of record, except as in this act otherwise provided": B. & C. Comp. § 2200. " The pleadings in actions in justice's courts, the forms thereof, and the rules by which the sufficiency of the pleadings is to be determined, shall be those prescribed by the Civil Procedure for actions in courts of record": B. & C. Comp. § 2211. " The rules in justices' courts governing * * the formation of issues * * shall be as prescribed in the Code of Civil Procedure for actions in courts of record, except as herein otherwise provided ": B. & C. Comp. § 2237. The statute regulating the mode of procedure in courts of record contains the following provision : " If the answer contains a statement of new matter constituting a defense or counterclaim, and the plaintiff fail to reply or. demur thereto within the time prescribed by law, the defendant may move the court for such judgment as he is entitled to on the pleadings ": B. & C. Comp. § 79. The reply did not deny the allegations of new matter in the answer, to the effect that the premises were leased for farming and agricultural purposes, or that the money consideration for the rent had been paid in full to October 1, 1903. The reply also avers that, Schreckler having failed

to keep or perform his part of the contract, plaintiff on April 9, 1903, notified him in writing of the breaches of the covenants of the lease, and of his election to declare the contract null and void.

The other sections of the statute considered applicable to the case at bar are as follows : " The following shall be deemed cases of unlawful holding by force within the meaning of this chapter : (1) When the tenant or person in possession of any premises shall fail or refuse to pay any rent due on the lease or agreement under which he holds, or deliver up the possession of said premises for ten days after demand made in writing for such possession ; (2) when, after a notice to quit as provided in this chapter, any person shall continue in the possession of any premises at the expiration of the time limited in the lease or agreement under which such person holds, or contrary to any condition or covenant thereof, or without any written lease or agreement therefor ": B. & C. Comp. § 5755. "An action for the recovery of the possession of the premises may be maintained in the cases specified in subdivision 2 of section 5755 when the notice to quit has been served upon the tenant or person in possession for the period of ten days before the commencement thereof, unless the leasing or occupation is for the purpose of farming or agriculture, in which case such notice must be so served for the period of ninety days before commencement of such action ": B. & C. Comp. § 5757. "The service of a notice to quit upon a tenant or person in possession does not authorize an action to be maintained against him for the possession of the premises before the expiration of any period for which such tenant or person may have paid the rent of such premises in advance ": B. & C. Comp. § 5758.

It will be remembered that the original action was commenced April 21, 1903, and the reply having stated that a notice was served upon Schreckler twelve days prior

thereto, and not having denied the averment of new matter in the answer that the money part of the consideration for the rent had been paid in full to October 1st of that year, the justice's court, construing the sections of the statute quoted, might have considered that ninety days' notice was requisite, when land was leased for the purposes admitted, and, as only twelve days' notice had been given, this action must fail, or that the rent having been paid to October 1, 1903, no action could have been maintained before the expiration of that period ; and these facts being apparent from an inspection of the pleadings, it may have concluded that it was authorized to render some judgment thereon. Whether or not the sections of the statute adverted to warranted the conclusion announced might be a pertinent inquiry in case an appeal had been taken ; but as the justice's court possessed power to render the judgment which it pronounced, whether erroneous or valid, it cannot be inquired into in a special proceeding of this character, for that would be making a writ of review a substitute for an appeal.

We do not deem it necessary to discuss at this time the question whether the right to an appeal from a judgment given in a justice's court in an action of forcible entry and detainer has been granted, for, if not, the fault lies with, and the remedy must be secured from, the legislative assembly.

The justice's court had jurisdiction to render the judgment complained of, and, having proceeded in the manner prescribed by law, however erroneous its conclusion may be, it cannot be reviewed ; and, no error having been committed in dismissing the proceedings, the judgment is affirmed.				Affirmed.