Argued April 22; affirmed May 25; rehearing denied
June 22, 1937

## LECHLEIDNER *v.* CARSON ET AL.

(68 P. (2d) 482)

*George Mowry*, of Portland (Mowry & Mowry and Charles W. Robison, all of Portland, on the brief), for appellant.

*Frank S. Grant*, City Attorney, and *John B. Seabrook*, Deputy City Attorney, both of Portland, for respondents.

RAND, J. The plaintiff, a former police office of the city of Portland, filed a petition in the court below to review the action of the mayor, chief of police and other officers of the city in causing him to be discharged and removed from office on a charge of drunkenness and wilful neglect of duty.

Pursuant thereto, a writ of review was issued out of said court, requiring the defendants to return the writ with a certified copy annexed thereto of the records and proceedings sought to be reviewed. The return to the writ was made and filed and the matter was then heard before the court and a judgment entered dismissing the writ. From this judgment, the plaintiff has appealed.

It appears from the return that, prior to his discharge, the plaintiff had served continuously as a police officer of the city for more than six years and that, under section 108 of the city charter, no employee in the classified civil service, who shall have been per-

manently appointed, and police officers are in that category, "shall be removed or discharged * * * except for cause, a written statement of which in general terms shall be served upon him and a duplicate filed with the board". That section further provides that, when any such employee has been removed, he may, within 10 days thereafter, file with the civil service board a written demand for an investigation and, if he shall allege or if it shall otherwise appear to the board that the discharge or removal was for political or religious reasons and not made in good faith for the purpose of improving the public service, the matter shall forthwith be investigated by the board or by some officer or board appointed by it, and that the investigation shall be confined to the determination of the question of whether such removal or discharge was made for political or religious reasons and not made in good faith for the purpose of improving the public service, and that, in such investigation, the burden of proof shall be upon the discharged employee.

It further provides that the board shall have power to reinstate the discharged employee or affirm his removal accordingly, as whether or not it shall find that the discharge was made in good faith and not for political or religious reasons, and that these findings shall be certified to the appointing officer and shall forthwith be enforced by such officer.

Under these provisions, the plaintiff could not be removed except for cause and upon written charges served upon him and a duplicate thereof filed with the civil service board, and a hearing had thereon and an opportunity afforded him to defend.

The return further shows that the plaintiff, within the time allowed, filed with the civil service board a

demand for an investigation and that pursuant thereto a hearing was had at which the plaintiff was present and represented by counsel, and that, upon the determination of the hearing, that board found that the charges preferred against the plaintiff had been sustained and were true, and recommended that plaintiff be dismissed from the service and thereby affirmed the action of the mayor and other officers of the city in discharging and removing plaintiff from office. These findings and recommendation were certified to the mayor and the plaintiff was thereby permanently removed from office.

Upon this appeal, the plaintiff contends ''that the discharge of this appellant from the Bureau of Police was utterly invalid and void for either or any one of the following three reasons: first, that at the time of the discharge no written charges whatever had been served upon him; second, that at the time of the discharge no written charges against him had been filed; third, that no witness who was called against him at the hearing which was held prior to the discharge and culminated in the discharge, was placed under either oath or affirmation''.

The defendants contend that, in removing the plaintiff from office, the officers of the city were acting in an administrative capacity and not performing judicial functions and, for this reason, they contend that a writ of review will not lie.

■ The contention of the defendants that the action of the city officials, in removing the plaintiff, is not subject to judicial review cannot be sustained. It is foreclosed by the decision of this court in *Crowe v. Albee,* 87 Or. 148 (169 P. 785). In that case the question arose in a mandamus proceeding brought by a discharged

policeman to compel the mayor of the city of Portland to reinstate him to his former position and one of the questions involved there was the question of whether the officers of the city, in removing the plaintiff from office, were exercising judicial or quasi-judicial functions, and it was held that while so acting they were not acting in the exercise of a purely administrative or ministerial duty, but were exercising judicial or quasi-judicial functions. Among the cases cited to support that view was *Hodgdon v. Goodspeed,* 60 Or. 1 (118 P. 167), where the court defined a ministerial act in these words:

"* * * A ministerial act consists in the discharge of some duty enjoined by law upon one or more persons, who, in obeying the rule prescribed, exercise no judgment or discretion regarding the matter."

■ Clearly, where a charter provides that an employee of a city may be removed only for cause and then only after written charges have been filed against him and a hearing had and an opportunity afforded to make a defense, as does the Portland charter, the determination of whether a sufficient cause does exist requires the exercise of judicial or quasi-judicial functions in making such determination and, although the procedure to be followed is prescribed by the charter and is dissimilar from that followed in court trials, yet the tribunal making the determination is bound to exercise judgment and discretion and, in the exercise thereof, is acting in a judicial or quasi-judicial capacity. To the same effect, see *Nelson v. Baker,* 112 Or. 79 (227 P. 301, 228 P. 916); *Biggs v. McBride,* 17 Or. 640 (21 P. 878, 5 L. R. A. 115); *Rutter, Jones & Simays v. Burke,* 89 Vt. 14 (93 Atl. 842).

■ Under the commission form of government existing in the city of Portland, the mayor and commis-

sioners are primarily a legislative body but they are often charged with judicial or quasi-judicial functions. When they or a body appointed by them to examine into charges against an employee, and the charter provides that the person charged can be removed for cause only, they act in the latter capacity. This does not give them the right to remove at their own pleasure and their discretion to remove from office is clearly limited to cases where cause is found to exist. In such case, if there is evidence to establish such a cause, the weight of the evidence and the sufficiency of the cause are for them to determine and not for the court, and their action in such case will not be reviewed if there was evidence before such bodies to establish the cause for which the officer has been discharged: *Rutter, Jones & Simays v. Burke,* supra. As said by this court in *Crowe v. Albee,* supra:

"No interference with the judgment or discretion of such boards should be tolerated under any circumstance, but courts will, upon proper application, reexamine the proceedings and determine whether or not the commissioners or boards had obtained jurisdiction of the persons of the adverse parties in the manner prescribed by the statute conferring the power and ascertain if the findings of fact and of law made by such quasi-judicial tribunals and the conclusions predicated upon such deductions, conform to the rules of practice and procedure governing such cases."

From this it will be seen that it is well established that, where a tribunal or board is vested with power to discharge for cause only, the exercise of the power is judicial or quasi-judicial and not administrative and that, when the power has been exercised in conformity with the rules of practice and procedure prescribed by the charter and notice and an opportunity to be heard and make a defense have been given, the tribunal or

board has jurisdiction both of the person charged and of the subject matter, and their determination is not subject to review by the courts. In such case the conclusion to be drawn from the evidence before them is a matter committed by law to their judgment and not to that of the court.

■ Nor do we think that any of the contentions of the plaintiff can be sustained, for the record shows that the practice and procedure prescribed by the charter have been followed and conformed to in all respects. It shows that, in conformity with the charter and ordinances of the city, written charges were preferred against the plaintiff by one of his superior officers and filed with the chief of police. Before taking any action thereon, the chief of police referred these charges to the discipline committee for investigation and, after a hearing thereon, that committee found the charges to be true and recommended that the plaintiff be discharged from the police force. Acting upon that recommendation, the plaintiff was removed from office by an order signed by the chief of police and by the mayor of the city. Then, as stated, demand was made for an investigation before the civil service board. In the order of discharge, signed by the mayor and chief of police, it is recited that a copy of the charges were attached to the order and furnished to the plaintiff. Whether he had prior thereto been served with a copy of the charges and notified of the hearing before the discipline committee, the record is silent but he was served with a copy of the charges and, based thereon, he demanded and received a hearing before the civil service board and, upon its findings and decision, the plaintiff was removed from office. As stated, at the hearing before the civil service board, plaintiff was represented by

counsel and was afforded full opportunity to make a defense. He, therefore, had notice and an opportunity to defend and, so far as the truth of the charges and the existence of a sufficient cause for his removal are concerned, the findings of the board are conclusive upon the courts in these proceedings.

■ Under our statute, a writ of review is a special proceeding and is substantially the common-law remedy of certiorari, with some modifications as to when the writ may issue and the relief which may be granted. But the statute does not materially enlarge the scope of the writ, or substantially change its character or purpose: *Garnsey v. County Court,* 33 Or. 201, 206 (54 P. 539). Upon review, the court has power to affirm, modify, reverse or annul the determination reviewed and, if necessary, award restitution to the plaintiff or, by mandate, direct the inferior court, officer or tribunal to proceed in the matter reviewed according to its decision: Section 8-210, Oregon Code 1930.

■ Under section 8-204, Oregon Code 1930, the statute makes the writ concurrent with the right of appeal and prescribes that it shall be allowed in all cases where the inferior court, officer or tribunal, in the exercise of judicial functions, appears to have exercised such functions erroneously or to have exceeded its or his jurisdiction to the injury of some substantial right of the plaintiff, and not otherwise. The fact that a right of appeal may exist is no objection to the issuance of the writ, but it cannot be used as a substitute for an appeal. Nor does it give the remedy the effect of an appeal and, since it cannot be used as a substitute for an appeal, it does not lie to correct mere errors in the exercise of rightful jurisdiction, or to inquire whether the rulings of an inferior tribunal upon the law and the evi-

dence, and in the application of the law to the facts, are correct: *Garnsey v. County Court,* supra, and authorities there cited. A writ of review may issue when there is a right of appeal but it is expressly limited to two classes of cases: first, whenever the inferior court or tribunal has exceeded its jurisdiction, and, second, whenever it has exercised its judicial functions erroneously; that is, illegally and contrary to the course of procedure applicable to the matter before it. As said in *Garnsey v. County Court,* supra:

"* * * Its object, under the statute, as at common-law, is to keep inferior courts and tribunals within the bounds of their jurisdiction, and compel them to proceed regularly in the disposition of matters brought before them for determination; but it cannot be used as a substitute for an appeal, nor does it lie to correct mere errors in the exercise of rightful jurisdiction, or to inquire whether the rulings of the inferior tribunal upon the law and the evidence, and in the application of the law to the facts, are correct."

See also *Farrow v. Nevin,* 44 Or. 496, 500 (75 P. 711).

Again, as said in *French v. Harney County,* 33 Or. 418, 421 (54 P. 211):

"* * * it is a familiar principle that questions presented by a writ of review must be tried by the record of the inferior tribunal whose proceedings cannot be contradicted at the trial. If the record, * * * is in fact incorrect, it should have been amended in a proper manner before it was sent up in obedience to the writ. It cannot be done at the hearing."

Again, as said in *Cookingham v. Lewis,* 58 Or. 484, 488 (114 P. 88, 115 P. 342):

"A writ of review lies only in cases in which the lower court, officer or tribunal has exceeded its jurisdiction, or where it has exercised its judicial functions erroneously and contrary to the course of procedure

applicable to the matter before it: Garnsey v. County Court, 33 Or. 201, 54 P. 539, 1089. Therefore, the writ will only bring up the record, upon which the case will be reviewed as to questions of jurisdiction and errors in the proceeding. It will not review questions of fact, and has nothing to do with the evidence. Smith v. Portland, 25 Or. 297, 301, 35 P. 665; Douglas County Road Co. v. County of Douglas, 6 Or. 299, 303.''

As above stated, the return filed in the lower court shows that written charges were preferred against the plaintiff and that a copy of such charges were furnished to him before the matter was referred to the civil service board, that an investigation was made by the civil service board and a hearing was had on said charges at which hearing the plaintiff was present and represented by counsel, and, after such hearing, the board found that the discharge was not made for political or religious reasons and was made for the improvement of the public service, and, based upon such findings, the civil service board affirmed the removal of the plaintiff. This disposes of all plaintiff's objections to the validity of his discharge except the single one that the witnesses who were heard and examined before the civil service board were not sworn. Whether they were or not, the record does not disclose. Under the charter, the civil service board was authorized to make "rules to carry out the purposes and provisions of this article, which rules shall provide, in detail, the manner in which examinations shall be held, and appointments, promotions and removals made in pursuance thereof; and the board may, from time to time, change its rules.'': Section 101. And as said in *Crowe v. Albee,* supra:

"The civil service board in the course of any investigation has power to subpoena witnesses, compel

their attendance, administer oaths, examine into books, records, etc., and to compel their production.

'Willful false swearing in such investigations and examinations shall be perjury and punishable as such.' "

 Under these provisions of the charter, of which, by section 56-501, Oregon Code 1930, we are required to take judicial notice, since certified copies thereof are on file with the librarian of this court, the civil service board had power to swear the witnesses. There is no evidence that they failed to do so and the presumption is that they did. If, however, the witnesses were not sworn and the administering of an oath was essential to the validity of the proceedings, a question upon which we pass no opinion, then, as said in *French v. Harney County*, supra, the record should have been amended in a proper manner so as to show such failure before it was sent up in obedience to the writ.

The plaintiff also contends that the attempted repeal by initiative vote of the people on November 6, 1934, of section 316 of the city charter, as it had existed prior to that date, was invalid and of no effect because of an alleged defective ballot title prepared by the city attorney for the submission of the matter to the voters of the city on said date.

Before its repeal, section 316 of the charter provided as follows:

"No member of the Bureau of Police who has served faithfully and efficiently for six years continuously shall be removed or discharged without first having a trial or hearing, and not then except for cause upon written charges, of which one copy shall have been served upon him and a duplicate filed with the Civil Service Board. Any policeman so removed may within ten days from his removal file with the Civil Service

Board a written demand for investigation. The cause of dismissal shall forthwith be investigated by or before the Board or by or before some officer or board appointed by the Civil Service Board to conduct such investigation. The findings of the Civil Service Board or such officer or board when approved by the Civil Service Board shall be certified to the appointing officer and shall be forthwith enforced by such officer.''

The act repealing section 316 of the charter is entitled:

AN ACT to amend sections 97, 102, 106, 108, and repealing Section 316, of an Act of the Legislative Assembly of the State of Oregon entitled, 'An Act to incorporate the City of Portland, Multnomah County, State of Oregon, and to provide a charter therefor and to repeal all acts or parts of acts in conflict therewith,' filed in the office of the Secretary of State, January 23, 1903, and as subsequently amended by the Legislature and by the people of the City of Portland from time to time, and as revised, codified and arranged by Ordinance No. 29350, passed August 19, 1914, amended June 6, 1928, pertaining to the appointment and removal of the Chief of Police, appointment and retirement age of members of the Bureau of Police, and making provisions for demotion, removal and discharge of members of the Bureau of Police.''

Section 19 of the charter provides:

''The initiative, referendum and recall shall be exercised within the City of Portland in the manner provided by the constitution and general laws of the state, and ordinances of the City of Portland, enacted in pursuance thereof.''

Section 36-2007, Oregon Code 1930, provides that the appropriate officer of each incorporated city or town having more than two thousand inhabitants shall furnish to the county clerk a certified copy of the ballot titles and numbers of the several measures to be voted upon at the ensuing general election.

By section 6 of Ordinance No. 63853 of the city of Portland, it is made the duty of the city attorney to provide a ballot title and transmit the ballot title so prepared by him to the council. It further provides:

"* * * In making such ballot title the City Attorney shall, to the best of his ability, give a true and impartial statement of the purposes of the measure, and in such language that the ballot title shall not be an argument for or liable to create prejudice against such measure. Such ballot title shall in no case exceed one hundred fifty words, * * *".

The ballot title prepared by the city attorney was as follows:

"Act amending four certain sections of Charter authorizing Mayor to appoint a Chief of Police having ten years active police service and who can be removed by Mayor; requiring patrolmen of the Bureau of Police to be between the ages of twenty-one and thirty on date of appointment; authorizing demotion or discharge of members of Bureau of Police for cause on written charges to be served on affected member and only after a hearing before Mayor, Chief of Police or discipline committee of superior officers and allowing affected member an appeal to the Civil Service Board from a demotion or discharge."

It will thus be seen that the ballot title contained no specific reference to the repeal of section 316 of the charter, but the ordinance above referred to provides:

"Upon receipt of the ballot title so prepared, the Auditor shall publish a notice in the city official newspaper, by one insertion therein, that the City Attorney has prepared and filed a ballot title on such proposed measure with the Council, and further stating that any person dissatisfied with the ballot title as prepared by the City Attorney on such measure may, within five days of said publication, appeal to the Council, asking for a different title."

And the record shows that no appeal was taken to the council and that the council adopted said ballot title and that the same was used as the ballot title of the measure to be voted upon.

Article IV, section 20, of the constitution, has no application to ballot titles. The title to the measure complied with all the requirements of article IV, section 20, of the constitution of this state. The alleged failure was with reference to the sufficiency of the ballot title itself. There is no constitutional provision of this state which has any application to the ballot title of an initiative measure to be voted upon by the legal voters at large or by the legal voters of a municipality. Nor is there any statute in this state or municipal ordinance of the city of Portland which prescribes that an initiative measure, after it has once been voted upon and adopted by a majority vote, shall be deemed invalid because of a defective ballot title. The act of the city council in adopting this ballot title was a legislative act which cannot, at this time, be questioned by this plaintiff or by any other person in a collateral attack upon the measure.

Finding no grounds upon which the writ can be sustained, the judgment of the court below is affirmed.